## SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

ONE MANHATTAN WEST
NEW YORK, NY 10001
———
TEL: (212) 735-3000
FAX: (212) 735-2000
www.skadden.com

FIRM/AFFILIATE OFFICES
———
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
WASHINGTON, D.C.
WILMINGTON
———
ABU DHABI
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MUNICH
PARIS
SÃO PAULO
SEOUL
SINGAPORE
TOKYO
TORONTO

DIRECT DIAL
(212) 735-2426
DIRECT FAX
(917) 777-2426
EMAIL ADDRESS
ANDREA.GRISWOLD@SKADDEN.COM

January 12, 2026

**By ECF**

The Honorable Lewis A. Kaplan
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

    Re:    *United States v. Gökçe Güven*, 25 Cr. 592 (LAK)

Dear Judge Kaplan:

The Government's letter lays bare its thin justifications for delaying this case, which are far outweighed by Ms. Güven's constitutional and statutory right to a speedy trial. The Government's effort to engineer delay in order to continue investigating an already-charged case at its own desired pace is not in the interests of justice. This Court should grant Ms. Güven's request for a speedy trial and schedule trial for early March.

    **1. This Case is Not Sufficiently Complex to Warrant Delay**

Contrary to the Government's assertions, this case is not "sufficiently complex" to warrant the exclusion of time. (Dkt. 20 at 4). Ms. Güven is currently charged with a single wire fraud count for an alleged scheme that lasted less than two years, and which resulted from a brief criminal investigation that began in August 2025. Relative to other fraud cases charged in the Southern District of New York, and by the Securities and Commodities Task Force in particular, the universe of discovery is not only unremarkable, but it is also small in scale. The quantity of discovery seized (and already extracted) from two devices, one iCloud account, and three email addresses associated with Ms. Güven pales in comparison to cases that involve dozens of seized devices and/or multiple emails, social media, and iCloud accounts from numerous account holders that are routinely

charged and tried in this district.[1] The U.S. Attorney's Office for the Southern District of New York and its FBI partners on this case are well equipped to expeditiously review discovery, including by running targeted searches within a database of voluminous documents. They are likewise well positioned to conduct the straightforward financial analysis presented by this case, which involves the financial condition of a relatively simple and small business. The Government alleges that Ms. Güven made misrepresentations related to revenue and Kalder's customer base and has not explained how that presents unusually complex analytical challenges. To the extent the case involves evidence that needs to be translated, that is easily surmountable with the technological advances in automated translation tools, and the speed at which official translations can be obtained for documents identified as exhibits for trial. The defense also does not intend to file pretrial motions, further simplifying and streamlining the case and preparation for trial.

**2. The Volume of New Discovery is a Product of the Government's Strategic Choices**

Notably, even the Government has not attempted to exclude time under 18 U.S.C. § 3161(h)(7)(B)(ii), which permits the court to exclude time in the interests of justice when the case is particularly complex. Instead, the Government falls back on 18 U.S.C. § 3161(h)(7)(B)(iv), which permits exclusion where the "failure to grant . . . a continuance . . . would unreasonably deny . . . the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence." As an initial matter, the timing of this prosecution is the direct result of the Government's strategic choices.

The Government opened this investigation in August 2025, but it only obtained its first search warrants—for Ms. Guven's iCloud and Google account—on October 27, 2025 (USAO_01_00000080; USAO_01_00000087), and it only obtained a warrant for Kalder's Slack accounts on January 5, despite its ability to do so earlier without notification to the company or the defendant, *see* 18 U.S.C. § 2705(b). The Government knew, of course, of the Speedy Trial Act's requirements when it obtained these warrants. If it needed additional time to obtain and review these materials, it could have sought them earlier or delayed filing charges.

The Government claims that it arrested Ms. Güven on November 29, 2025, because it "had a concern that, because of her immigration status, another opportunity to obtain her arrest within the United States may not have occurred." (Dkt. 20 at 5). This assertion does not withstand even minimal scrutiny. Ms. Güven was arrested *coming into* the country, not leaving it. She has lived in the United States for years, her business is based in New York, and there is no indication she was poised to flee upon reentering the country. It is apparent that the Government seized an opportunity to arrest Ms. Güven at a time when she would be in possession of her electronic devices, which were seized upon her arrest. The Government's failure to investigate thoroughly and its hasty arrest of Ms. Güven are all the more reason to permit her to proceed to trial

---

[1]   Although the Government represented at the initial pretrial conference that it was unable to access certain portions of Ms. Güven's data from the prosecutors' computers (Jan. 6, 2026 Tr. at 9:19-21), it does not cite that justification in its written submission as a basis to delay the trial. In any event, the parties are on equal footing with respect to their ability to access and review the relevant data, as the Government has already produced to the defense the complete forensic images of Ms. Güven's phone and computer.

expeditiously to clear her name. It is not, as the Government contends, a reason to give the Government a grace period to perform additional investigative steps that could have been completed before the Speedy Trial clock started to run.

### 3. The Prospect of a Superseding Indictment is Not a Basis for Delay

The prospect of a superseding indictment is not a reason for delay. The additional charges that the Government has indicated are being considered do not alter the complexity profile of this well-contained case or the nature of the discovery.

The Government claims its ongoing investigation justifies excluding time, at least until the date a superseding indictment is returned. But the cases it relies on—and which it cited at the most recent conference—do not bear that out under these circumstances. In particular, the Government cites three cases from the 1980s that are devoid of information that would render the opinions applicable here. *United States v. Villano*, 129 F.R.D. 32 (W.D.N.Y. 1989), is particularly irrelevant, not least because the defendant requested the continuance at issue. And neither Second Circuit opinion specifies the defendant's position before the district court about excluding time. Moreover, in *United States v. Golomb*, 754 F.2d 86, 88 (2d Cir. 1985), the delay was described as "brief" and related to "unraveling . . . complex transactions." *Ruggiero*'s terse analysis likewise rested on the "complexity of the case" and the "large volume of evidence." *United States v. Ruggiero*, 726 F.2d 913, 925 (2d Cir. 1984).

Notably, the Government does not cite a single case in the last thirty years to support its assertion that an ongoing investigation is a basis to delay. That is not surprising, since the law is now clear that charges carried over from an original indictment to a superseding indictment inherit the clock from the original indictment. *See United States v. Roman*, 822 F.2d 261, 263-64 (2d Cir. 1987). It would defeat the purpose of this rule if the Government were able to toll the Speedy Trial clock while preparing a superseding indictment.

And simply because the district courts in those decades-old cases had discretion to exclude time does not mean that the weighing of interests here should yield that same result. It should not. The timeline of this case—charge first, investigate later—is not a basis to deprive Ms. Güven of her right to a speedy trial.

### 4. The Government's Unrealistic Discovery Deadlines Do Not Justify Delay

The Government's effort to justify delay by laying blame with Kalder is equally unavailing. The Government claims that Kalder has been dilatory in responding to a subpoena served on November 29, 2025 with a return date of December 15, 2025. That is demonstrably not the case.

The company could not realistically have responded to a subpoena calling for such broad categories as "any and all offering materials related to any debt, equity, partnership, investment, or other ownership interest in Kalder, including, but not limited to, offering memoranda, pitch decks, investor guides, and marketing materials," "all communications with current or prospective investors in Kalder," and "all communications with current or prospective customers of Kalder" within two weeks. (Ex. A at 2). Even for a small company like Kalder, a response to such a

3

subpoena routinely takes several months or more. The Government has implicitly acknowledged this fact. As relayed in company counsel's letter, attached as Exhibit A here, the Government did not object when company counsel informed the prosecutors, on December 11, 2025 during their first substantive conversation regarding the November 29, 2025 subpoena, that the company could not complete production by December 15, 2025. (*Id.* at 3). Nor has the Government moved to compel Kalder to complete its production in response to the subpoena. If the Government truly believes that Kalder has been dilatory in responding to its subpoena, a motion to compel—not a request to abrogate Ms. Güven's right to a prompt trial—would be its avenue for relief.

In fact, as the Government knows, Kalder and its counsel, who are working without pay, have taken extraordinary steps to comply with the subpoena quickly. Before December 15 (the return date on the subpoena), Kalder made five productions to the Government. (*Id.*). Since December 15, Kalder has made four additional productions. (*Id.* at 3-4). The only outstanding items for production are the Slack data and the Google platform emails and documents—documents that present unique challenges that Fenwick expeditiously communicated to the Government. Fenwick explained that, in light of Kalder's lack of available funds, it is not feasible for Fenwick to conduct a standard document review process through which it culls and reviews communications potentially responsive or privileged. (*Id.* at 4). The Government and Kalder negotiated the terms of a stipulation pursuant to Rule 502 of the Federal Rules of Evidence under which Kalder could produce records from Kalder's Slack and Google platforms to the Government in bulk, while also establishing a procedure to screen out records potentially subject to the attorney-client privilege and the attorney work product doctrine without waiving those privileges. (*Id.*). The negotiation of the terms of the Rule 502 Stipulation took some time, including because of delay by the Government, and explains why Kalder did not begin producing communications until January 1, 2026 (the day the Rule 502 Stipulation was finally executed). (*Id.*). It is our understanding that the Slack data will be produced this week and the Google data will shortly follow. (*Id.* at 5). Additionally, Fenwick is continuing to engage with the Government's Filter Attorney to ensure that the procedure in place for review results in a fast process. (*Id.*).

The Government attempts to blame Ms. Güven for Kalder's production delay. (Dkt. 16 at 11:12-14 ("And I'll note, your Honor – and this was evident in defense counsel's letter last night – the company is controlled by the defendant.")). As described, however, the record does not support that claim. The Government gave an unreasonable deadline to Kalder, a startup with limited resources and restricted funds to produce a massive number of documents, and Kalder has reasonably responded to the subpoena and plans to continue to do so. Kalder's rolling productions, which should be completed shortly, are not a basis to deprive Ms. Güven of her right to a speedy trial.

And, again, the fact that the Government is now demanding extraordinary efforts to comply with its subpoena, is entirely a product of the Government's own strategic choices. The prosecutors in this case are no strangers to corporate investigations and could reasonably have anticipated that it would take more than two weeks for the company to respond to such a broad subpoena. Recognizing that, the Government could have done as it does in nearly every white-collar investigation and served the company with a subpoena months ago, when it began its investigation. The Government chose not to do that, apparently for strategic reasons. But the Government's

choice to forgo the advantage of time, in favor of an advantage that the Government may have perceived as more valuable, is not a reason to penalize Ms. Güven.

### 5. The Scheduling Conflicts of a Single Government Attorney Do Not Support Delay

The Court should also reject the Government's claim that a continuance is warranted because of the work schedule of an individual Assistant U.S. Attorney. Given the prejudice Ms. Güven has explained she will suffer from delaying resolution of her case, it is particularly surprising that the Government asserts Ms. Güven's interests are outweighed by a prosecutor's scheduling conflict, when the U.S. Attorney's Office routinely substitutes prosecutors on cases to ensure that the Government is not a source of trial delay. The Government cites *United States v. Jones*, 847 F. App'x 28, 31 (2d Cir. 2021), which only illustrates why this is a case where the interest in "continuity of counsel" is particularly weak. In *Jones*, the court relied on a continuity-of-counsel rationale to grant a continuance in a case where the trial date had already been moved twice at the defendant's request, and the prosecutor who was unavailable had been working with the minor vulnerable victims who were witnesses in the sex trafficking case for two years. Brief for Appellee at 32, *United States v. Jones*, 847 F. App's 28 (2d Cir. 2021) (18-0042-cr, Dkt. 97). By contrast, this investigation began less than six months ago, and the Government has not identified any reason why the case cannot be readily transitioned to another prosecutor who is available to prepare for trial.

And, again, any conflict between the prosecutor's schedule and Ms. Güven's Speedy Trial right is purely a product of the Government's strategic choices. Although the Government's motion throws plenty of spaghetti at the wall in the hope that some will stick, its request for a trial date of "June 15, 2026 or later"—more than 100 days more than the statutorily prescribed timeframe—appears to be driven entirely by the fact that one of the prosecutors assigned to this matter is scheduled to begin a trial on April 6, 2026. But that trial date was set on November 10, 2025, during a conference, at which the prosecutor in question was present. *See United States v. Heppner*, No. 25 Cr. 503 (JSR), Nov. 10, 2025 minute entry. The Government was thus aware when it arrested Ms. Güven more than two weeks later, on November 27, 2025, that the conflict it now cites existed.

### 6. A Delay is Not in Ms. Güven's Interest

The Government purports to speak for Ms. Güven, claiming that the strategic delay it seeks is in fact in her interest to adequately prepare for trial. If the Government were truly accounting for Ms. Güven's interest in a speedy trial, it would assure the Court of its readiness to proceed by a date requested by the defendant. Instead, it points to a Brazilian MLAT as a basis to exclude time. Notably, the Government does not specify when it served its MLAT request or what records are uniquely within the possession of the Brazilian soccer clubs and important to trial that would not also be present in the records it has already collected from Kalder and from Ms. Güven's devices and accounts. Indeed, an MLAT response can take months, if not over a year, to obtain—it cannot be that the Government may elude the careful balancing of interests central to the exclusion of time by filing an MLAT for some peripheral or duplicative evidence. It is certainly not a basis here to put Ms. Güven's case on prolonged hold.

Nor is there any merit to the Government's claim that the trial must be delayed in order for the court to decide the parties' motions *in limine*. The schedule for the filing and resolution of such motions is frequently set by reference to an established trial date, because a motion *in limine* is "a submission of evidence which need not be admitted or excluded until trial; indeed, it is commonly carried over until trial." *United States v. Rush*, 738 F.2d 497, 505 (1st Cir. 1984) (concluding that, even if styled as a motion, "an offer of proof is not a pretrial motion within the meaning of (h)(1)(F)); *see also Palmieri v. Defaria*, 88 F.3d 136, 139 (2d Cir. 1996) (citing *Luce v. United States*, 469 U.S. 38, 41-42 (1984)) ("An in limine evidentiary ruling does not constitute a final ruling on admissibility."); *but see United States v. Rojo-Alvarez*, 944 F.2d 959, 966 (1st Cir. 1991) ("[T]he court is entitled to exclude at least the period of time during which it considers how to treat the filing.").

It is worth noting, too, the difference between the exclusion of time and the scheduling of a trial. Even if service of a tangential MLAT, or the filing of a motion, may be a technical basis to toll the Speedy Trial clock, it does not automatically follow that trial should be delayed until the 70th day on that clock. In fact, the statute contemplates that trial may commence as soon as thirty days from the defendant's first appearance. 18 U.S.C. § 3161(c)(2). The right to a speedy trial embodies "one of the most basic rights preserved by our Constitution." *Klopfer v. North Carolina*, 386 U.S. 213, 226 (1967). And under the Speedy Trial Act, the interests of justice overwhelmingly support granting Ms. Güven's request for a trial in early March. As previously described to the Court, Ms. Güven is severely burdened by the pending charges and will be prejudiced by further delay. (Dkt. 16). She wishes to clear her name and move forward with her life.

The Government's motion to exclude time until June 15, 2026 should be denied. And even in the event that time is excluded, trial should nonetheless be scheduled for early March.

Respectfully submitted,

/s/ Andrea Griswold

Andrea Griswold, *Skadden, Arps, Slate, Meagher & Flom LLP*
Scott Hartman, *Quinn Emanuel Urquhart & Sullivan, LLP*
Danielle Sassoon, *Clement & Murphy, PLLC*

cc:   Alexandra Rothman
      Allison Nichols
           Assistant United States Attorneys (by ECF)