# Exhibit A



902 Broadway
18th Floor
New York, NY 10010-6035

212.430.2600
Fenwick.com

Noah Solowiejczyk
NSolowiejczyk@fenwick.com  |  212.430.2779

January 12, 2026

Honorable Lewis A. Kaplan
United States District Judge
Southern District of New York

Re:   *United States v. Gökçe Güven*, 25 Cr. 592 (LAK)

Dear Judge Kaplan:

      Fenwick & West LLP ("Fenwick") writes on behalf of Kalder Inc. ("Kalder" or the "Company") and in its capacity as outside counsel in connection with Kalder's compliance with the Grand Jury Subpoena to Kalder dated November 29, 2025 (the "November 29 Subpoena"). The purpose of this letter is to set forth Kalder's compliance to date with the November 29 Subpoena to ensure that the Court has the full factual record. This letter is not intended to argue the merits of the Government's pending motion to exclude time under the Speedy Trial Act until at least June 15, 2026.

      Kalder has moved expeditiously to comply with the November 29 Subpoena, which seeks a broad set of documents covering an extensive timeframe. Kalder has done so despite the fact that essentially all of its assets have been frozen by the Government as of approximately December 1, 2025.[1] Kalder is a small startup company with limited infrastructure and, at this time, does not have the means to pay Fenwick for its work in connection with compliance with the November 29 Subpoena due to the freeze of substantially all of Kalder's assets. Outside counsel is working directly with Kalder's small team, which does not include an in-house IT function or discovery team, to collect and process the large swaths of data sought by the Government. Despite these significant obstacles, Kalder has remained fully committed to responding to the November 29 Subpoena thoroughly and expeditiously, and Kalder has taken and will continue to take all reasonable steps to ensure swift compliance. In total, Kalder has already produced to date over 176,000 documents and 69 gigabytes of data in response to the November 29 Subpoena.

---

[1] The Government froze all of Kalder's accounts on December 1, 2025, pursuant to freeze letters served by the Federal Bureau of Investigation to Kalder's financial institutions. A seizure warrant was issued on December 11, 2025, which commanded the seizure of all monies in Kalder's Mercury accounts, excluding approximately $64,500 in untainted funds, which were released to Kalder. Counsel have continued representation without payment and have nonetheless made good faith efforts to produce responsive materials in a timely fashion.

January 12, 2026
Page 2

The November 29 Subpoena

The November 29 Subpoena contains 19 requests in total, and seeks records from January 1, 2022 through the present. The November 29 Subpoena had a return date of December 15, 2025. The 15 requests not related to the Special Committee investigation seek, among other things:

> Documents sufficient to show the following for all Kalder employees and contractors, both current and former: name, title, phone number, email address, date hired, date terminated (if applicable), reason for termination (if applicable), and compensation, including but not limited to, base salary and bonus. (Request 2)
>
> Any and all offering materials related to any debt, equity, partnership, investment, or other ownership interest in Kalder, including, but not limited to, offering memoranda, pitch decks, investor guides, and marketing materials. (Request 5)
>
> All documents reflecting Kalder's financial condition, including financial statements and reports, draft financial statements and reports, financial projections, corporate ledgers, corporate accounting files, audit files, and bank account statements. (Request 6)
>
> All communications with current or prospective investors in Kalder. (Request 7)
>
> All communications with current or prospective customers of Kalder. (Request 8)
>
> All contracts or service agreements with customers on the Kalder platform. (Request 9)
>
> Documents sufficient to show Kalder's valuation and funding rounds. (Request 10)
>
> Kalder's capitalization table (Request 11)
>
> A list of all Board members, including names, titles, phone numbers, email addresses, and length of service. (Request 12)
>
> Board materials and Board minutes reflecting Kalder's financial condition, fundraising rounds, and customer partnerships. (Request 13)[2]

Kalder's Compliance with the November 29 Subpoena

Kalder began working to comply with the November 29 Subpoena immediately, taking steps to preserve and collect the necessary records contemporaneous with receipt of the subpoena.

---

[2] Request 1 seeks all records produced to the SEC. Request 3 seeks organizational charts, which Kalder informed the Government do not exist. Request 4 seeks written corporate policies, which Kalder likewise informed the Government do not exist. Request 15 seeks Kalder's D&O insurance policy, which likewise does not exist. Four of the requests relate to an investigation performed by a Special Committee of the Board of Directors.

January 12, 2026
Page 3

Fenwick had numerous calls with the Government in the weeks after the November 29 Subpoena was issued in order to discuss and prioritize production of records of particular significance to the Government.

*Production of Records Other Than Communications*

Mere days after receiving the November 29 Subpoena – and substantially in advance of the December 15, 2025 return date – Kalder began producing records to the Government. On December 5, 2025, Kalder produced bank account statements and expense records covering multiple years, balance sheets, and profit and loss statements. On December 7, 8, and 10, 2025, Kalder produced additional financial statements. The first substantive conversation with the Government regarding the categories of documents requested in the November 29 Subpoena took place on December 11, 2025. During that call, Kalder advised the Government that it would continue productions on a rolling basis but could not complete production of all categories of documents by the December 15 return date. On December 12, 2025, Kalder subsequently produced another 1,174 native documents and 4,127 TIFF-imaged pages that included certain of the prior productions now with Bates stamps, as well as employee records and payroll journals from Kalder's human resource platform, the current capitalization table, and additional financial and accounting records. Thus, even before the December 15 return date, Kalder had produced a fulsome set of records.

Kalder's productions continued at a fast clip thereafter. On December 16, Kalder produced customer contracts, board meeting minutes and other board records, and additional financial records, tax returns, and tax filing documents. The Government had also previously indicated during a telephone call that it was particularly interested in obtaining a copy of Kalder's general ledger from the accounting software QuickBooks. Kalder, in an effort to be responsive to the Government's priorities, worked to download this data directly from QuickBooks and produced it on December 16, 2025. On December 18, 2025, Kalder produced certain limited Slack communications that the Government had referenced during a December 11, 2025 call, again in an effort to be responsive to the Government's priority requests.

On January 7, 2026, Kalder produced exports from Kalder's Hubspot account, which is a tool Kalder uses for its customer relationship management function. In addition, Kalder produced records that it had provided to investors through the online platform DocSend.

The Government also notes that it is awaiting "recordings of meetings with customers, employees and investors" and that "Kalder has yet to provide the Government with a timeline on when they will produce these recordings – materials that are likely to be highly probative of the allegations in the Indictment." (Dkt. No. 20, at 5). The Government is referring to AI Fireflies, a service that Kalder utilized to record and transcribe meetings using AI. After the Government sought said data, Kalder had to request directly from AI Fireflies that AI Fireflies furnish Kalder with a full download of Kalder's data. It was not within Kalder's control when AI Fireflies complied with this request. AI Fireflies has now furnished the full recordings and transcript data

January 12, 2026
Page 4

– which is voluminous – to Kalder. Fenwick has the data and intends to produce it this coming week.

*Production of Communications*

With respect to the production of communications, the Government states in its letter of January 8, 2026 to the Court (Dkt. No. 20) that "[n]otably the company did not produce any communications – despite the defendant's access to them – during the period between the defendant's arrest and her indictment." (Dkt. No. 20, at 5). This statement omits some important facts and context. As an initial matter, Kalder does not have access to substantially all of its assets and Fenwick is not currently receiving payment for its work in connection with compliance with the November 29 Subpoena. Accordingly, it is not feasible for Fenwick to conduct a standard document review process through which it culls and reviews communications potentially responsive to the November 29 Subpoena. Fenwick first raised this issue with the Government during a call on December 11, 2025. The Government and Kalder thereafter negotiated the terms of a stipulation pursuant to Rule 502 of the Federal Rules of Evidence (the "Rule 502 Stipulation") under which Kalder could produce records from Kalder's Google and Slack platforms to the Government in bulk while also establishing a procedure to screen out records potentially subject to the attorney-client privilege and the attorney work product doctrine without waiving those privileges.

The negotiation of the terms of the Rule 502 Stipulation took some time and explains why Kalder did not begin producing communications until January 1, 2026 (the day the Rule 502 Stipulation was finally executed). The Government provided Kalder with a template Rule 502 Stipulation on December 11, 2025 for Kalder to review. On December 15, 2025, Kalder asked the Government to send a draft Rule 502 Stipulation for the company's consideration. The Government sent a draft Rule 502 Stipulation the same day. On December 18, Kalder sent back a revised version of the Rule 502 Stipulation with proposed modifications. On Friday, December 19, 2025, the Government sent Kalder a modified version of the Rule 502 Stipulation that accepted certain of Kalder's edits while rejecting certain others and that contained further modifications. On Tuesday, December 23, 2025, Kalder sent the Government a revised version of the Rule 502 Stipulation. On December 26, 2025, the Government proposed an additional edit to the Rule 502 Stipulation by email. On December 29, 2025, the Government sent Kalder a revised version of the Rule 502 Stipulation that reflected the edit proposed on December 26, 2025.

Kalder executed the Rule 502 Stipulation on December 31, 2025. The Government countersigned on January 1, 2026. On January 1, 2026, Kalder produced the entirety of Gökçe Güven's Kalder emails (excluding potentially privileged records which were segregated and not produced) and certain Slack channels.

January 12, 2026
Page 5

With respect to Slack communications, Kalder did not have a subscription to a premium version of Slack that would allow Kalder to download private Slack channels and communications (*i.e.*, communications between individual users) in bulk. In order to comply with the November 29 Subpoena, Kalder expended funds to *upgrade* its Slack subscription in order to facilitate a bulk download of *all* Slack communications. Kalder now has this data in its possession and plans to produce it this coming week. Thus, the Government will in short order have all of Kalder's Slack data.

With respect to the remainder of the Google platform emails and documents, Kalder intends to produce these records in bulk pursuant to the Rule 502 Stipulation. Fenwick had a productive call today with the lead privilege filter attorney for the U.S. Attorney's Office to discuss how to efficiently address records that are potentially privileged and/or subject to the work product doctrine. Kalder is considering allowing the U.S. Attorney's filter review team to conduct much of this screening process itself to avoid delay and allow the Government to move as expeditiously as it can to make privilege determinations. Because Kalder's assets are frozen and counsel is not being paid, it will not be feasible for Fenwick to conduct the entire privilege review itself. Thus, Kalder is open to involving the Government's filter review team to make the process go faster and in consideration of Kalder's resource limitations.

<u>Conclusion</u>

Kalder has undertaken thorough and consistent efforts to comply with the November 29 Subpoena, even though substantially all of the Company's assets are currently frozen pursuant to a seizure warrant. Through the Rule 502 Stipulation and the discussions with the U.S. Attorney's Office's filter review team, Kalder is confident that it will successfully complete production of the remaining records in short order.

Sincerely,

FENWICK & WEST LLP


*/s/ Noah Solowiejczyk*
Noah Solowiejczyk
David Feder