# Exhibit A



902 Broadway  
18th Floor  
New York, NY 10010-6035

212.430.2600  
Fenwick.com

Noah Solowiejczyk  
NSolowiejczyk@fenwick.com | 212.430.2779

January 16, 2026

Honorable Lewis A. Kaplan  
United States District Judge  
Southern District of New York

Re:   *United States v. Gökçe Güven*, 25 Cr. 592 (LAK)

Dear Judge Kaplan:

  Fenwick & West LLP ("Fenwick") writes on behalf of Kalder Inc. ("Kalder" or the "Company") and in its capacity as outside counsel in connection with Kalder's compliance with the Grand Jury Subpoena to Kalder dated November 29, 2025 (the "November 29 Subpoena"). We write in response to the Government's letter dated January 14, 2026 (Dkt. No. 24) and to correct the Government's inaccurate portrayal of Kalder's ongoing efforts to comply with the November 29 Subpoena.

  Kalder has not refused to comply or attempted to evade compliance. Instead, the reality is that the Government's own seizure of substantially all of Kalder's assets has left the Company without the financial means to carry out the review the Government demands. Kalder has already produced substantial materials, signed a Rule 502 stipulation, and proactively sought solutions that would allow the Government timely access to the remaining data.[1] Kalder's inability to perform a costly privilege review is not a strategy nor is it a "gambit"; it is the direct result of the Government's seizure of Kalder's assets. The Government's speculation about Kalder's motives is unsupported and inconsistent with the parties' actual course of dealing to date.

  On January 9, 2026, Fenwick spoke with the Government about its ongoing efforts to comply with the November 29 Subpoena, among other matters. During that call, Fenwick informed the Government that Kalder does not have the financial resources to host or conduct a privilege review of a 16,000-document batch of potentially privileged documents and that absent Government assistance or a modified protocol, privilege review was not feasible. Fenwick emphasized that Kalder was not invoking privilege as a delay tactic but was simply stating that Kalder's lack of assets made a privilege review that required significant involvement from Kalder exceedingly difficult. In light of these circumstances, Fenwick requested a discussion with the Government's filter team about potential Government-led privilege review and hosting solutions, which the AUSAs recognized as reasonable.

---

[1] Kalder's compliance efforts were further detailed for the Court in Kalder's letter dated January 12, 2024 (Dkt. No. 22-1). Kalder made an additional production in response to the November 29 Subpoena on January 15, 2026 that consisted of voluminous data from Fireflies AI, a meeting recording and transcription platform used by Kalder.

January 16, 2026
Page 2

On January 12, 2026, Fenwick had a productive call with Government's lead filter attorney, who was receptive to exploring workable options with Kalder. Fenwick again explained that Kalder lacks funds to conduct a conventional review. The Government's lead filter attorney acknowledged the unusual posture. The parties discussed potentially narrowing by custodians, search terms, and timeframe; explored Government hosting of data; and raised the possibility of Government-led privilege review, with Kalder available to assert privilege where appropriate. The Government's January 14 letter omits this cooperative exchange and instead mischaracterizes Kalder's incapacity as "refusal."

Courts have held that where a corporation demonstrates that compliance with a subpoena would impose an unreasonable or oppressive burden relative to its resources, cost-shifting, government advancement of expenses, or reimbursement of costs is appropriate. While in the typical course, the subpoenaed party must bear the expense of compliance, *see, e.g.*, *In re Grand Jury Investigation*, 459 F.Supp. 1335, 1340 (E.D. Pa. 1978), that is not always the case. Courts in this District have recognized that the Court "retains the discretion to shift the burden of bearing such costs to the Government." *See In re Various Grand Jury Subpoenas,* 235 F. Supp. 3d 472, 479 (S.D.N.Y. 2017). "[T]here must be a 'clear showing of unreasonableness or oppressiveness in order to warrant modification' of the grand jury subpoena." *Id.* at 479 (quoting *In re Grand Jury Subpoenas to Midland Asphalt Corp*., 616 F.Supp. 223, 225 (W.D.N.Y. 1985)). Here, such a showing is straightforward. Kalder had substantially all of its assets seized by the Government. There is no secret pot of money to pay the legal fees that have already been expended and that will continue to need to be expended to comply with the broad subpoena.

Thus, if the Government wants the records promptly, it should not resist taking on the burden to make that happen. *See, e.g.*, *In In re Grand Jury Subpoena Duces Tecum Issued to Southern Motor Carriers Rate Conference, Inc.*, 405 F. Supp. 1192, 1197–1200 (N.D. Ga. 1975) (finding compliance "virtually impossible" where entity had only $9,634 in funds but faced over $900,000 in compliance costs, and therefore requiring the Government to either advance costs or provide personnel and equipment). Given Kalder's financial situation, it cannot be expected to pay for hosting, processing, or reviewers, nor should it be expected to bear the legal costs associated with undertaking a burdensome privilege review. Kalder certainly cannot undertake the review the Government is contemplating in the timeframe it demands. This is exactly the scenario in which courts have authorized Government cost advancement or Government-led review. Fenwick has been exploring solutions – namely that Kalder turn over records in bulk and that the Government's filter team conduct a privilege review, with only a limited set of records being provided to Fenwick as necessary to confirm privilege calls.

January 16, 2026
Page 3

      Kalder has acted in good faith throughout this process and has consistently sought practical solutions despite the financial hardship it faces due to the Government's seizure of its assets. What the Government characterizes as "refusal" is simply financial impossibility, not obstruction. Kalder will continue to undertake its best efforts under the circumstances to complete its productions in response to the November 29 Subpoena.

                                      Sincerely,

                                      FENWICK & WEST LLP


                                      */s/ Noah Solowiejczyk*
                                      Noah Solowiejczyk