

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

March 12, 2026

**BY ECF**

Honorable Lewis A. Kaplan
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007

    Re:    *United States v. Gökçe Güven*, S2 25 Cr. 592 (LAK)

Dear Judge Kaplan:

    The Government respectfully writes to request that the Court hold Kalder Inc. and its corporate officers in contempt of the Court's March 2, 2026 Compulsion Order directing Kalder to comply with the Government's January 9, 2026 Subpoena, (Dkt. 44), subject to limited additional fact-finding as described below. The Government further requests that the Court impose a fine of $1,000 per day, jointly and severally between Kalder and its officers, to be imposed immediately upon issuance of a contempt order but tolled while an appeal is pending.

### Procedural History

    By letter dated March 9, 2026, Kalder informed the Court that it does not intend to comply with the Court's March 2 Compulsion Order, and instead seeks to appeal the Order to the Second Circuit. (Ex. 1).[1] This refusal to comply is Kalder's latest effort to inject delay in these proceedings, withhold production of materials pertinent to an ongoing grand jury investigation, and place responsive materials out of reach of the Government and the grand jury until after the conclusion of defendant Gökçe Güven's trial, scheduled for June 15, 2026.

    As the Court is aware, Güven is (or at least was until very recently) the founder, majority owner, CEO, and sole board member of Kalder. (Dkt. 16 (noting Güven is Kalder's "sole senior executive"); Kalder's Sealed Opp. Mot. at 3, 5 (noting that the other director of Kalder's two-person board of directors resigned in August 2025); Dkt. 32 at 2). Initially, Güven sought a speedy trial on her criminal charges, even as the company she controlled indicated its inability to timely comply with an outstanding grand jury subpoena ("Subpoena I"). (*See* Dkt. 32 at 10-12 (noting that the Government "is entitled to at a minimum all non-privileged responsive information in

---

[1] Because Kalder did not file its letter on the docket, the Government has attached the letter as Exhibit 1.

Kalder's possession" and that "[t]o the extent any delay in discovery is attributable to Kalder, that delay is attributable also to defendant.")).

The Government issued a second subpoena ("Subpoena II") to Kalder, and when Kalder indicated it would not comply, the Government filed a motion to compel.[2] By its March 2, 2026 Compulsion Order, the Court ordered Kalder to comply in all respects with Subpoena II by March 9, 2026. Kalder waited until the evening of March 9 to indicate it would not comply and seek a formal contempt order that would give it a basis to appeal the Court's Compulsion Order.

Meanwhile, the defendant's position on the trial date has changed. Güven now seeks a multi-month adjournment of the June 15, 2026 trial, citing scheduling conflicts for one or more of her attorneys.

Kalder's counsel also now claims that Güven—its founder and majority shareholder, and until recently, its CEO and sole board member—was not part of the decision to refuse to comply with the Court's Compulsion Order. But Kalder has yet to inform the Government who, if not Güven, made this decision.

**The Court Should Hold Kalder and its Corporate Representatives in Contempt**

The Court may hold a party in contempt where the order violated by the party is "clear and unambiguous," the proof of non-compliance is "clear and convincing," and the party was not attempting to comply in reasonably diligent fashion. *United States v. Loc. 1804-1, Int'l Longshoremen's Ass'n, AFL-CIO*, 44 F.3d 1091, 1096 (2d Cir. 1995). While this standard is arguably met here (the Court's Compulsion Order directs Kalder to produce materials in response to Subpoena II and, by its March 9, 2026 letter, Kalder has indicated it will not comply), corporations can only speak through their representatives, *see United States v. Int'l Bhd. of Teamsters*, 119 F.3d 210, 215 (2d Cir. 1997). And, a clear and unambiguous order is one that leaves "no uncertainty in the minds of those to whom it is addressed." *Hess v. New Jersey Transit Rail Operations, Inc.,* 846 F.2d 114, 116 (2d Cir. 1988); *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995).

The Court should hold both Kalder and its corporate representatives in contempt of the Court's Order. *See ICBC (London) PLC v. Blacksands Pac. Grp., Inc.*, No. 15 Civ. 0070 (LAK), 2016 WL 7378778, at *2 (S.D.N.Y. Dec. 15, 2016) (holding the defiant company and the individual who "controls" the company in contempt). To do this, the Court should first require

---

[2] In this litigation, too, Kalder has pursued a strategy of delay. For instance, Kalder represented to the Government by letter dated January 12, 2026 that it would produce relevant engagement letters, which Subpoena II called for. Kalder made the same representation to the Court on January 22, 2026 in its sealed opposition papers. But Kalder did not produce the letters until more than one month later, on February 24, 2026, and only after the Government informed Kalder that it would bring the company's non-compliance to the Court's attention. Those letters confirm what the Government argued in its motion, namely, that the internal investigation was commenced not in anticipation of litigation but "for [p]urposes of [e]nhancing the [c]ompleteness and [a]ccuracy of [f]inancial [r]eports." (Kalder_DOJ_00203007).

Kalder to identify its new corporate representative or representatives and require those representatives to aver—on the record—that they have reviewed the Court's Compulsion Order with counsel, will not comply, and that they understand the consequences of being held in civil contempt for refusing to comply with the Order. This record could be pursuant to an affidavit or at a conference held at the Court's convenience.

Kalder's attorneys had conveyed to the Government that they might be willing to enter into a written stipulation establishing those facts but have thus far declined to identify the person or persons who are speaking for the company. They then indicated that they are not presently authorized to take a position on the Government's proposals with respect to the scope of the contempt order or the imposition of financial penalties.

**The Court Should Impose Financial Penalties on Kalder and Its Corporate Representatives**

In its March 9, 2026 letter, Kalder urges the Court not to impose a financial penalty when it holds the company in contempt. (Ex. 1 at 1). A financial penalty that is tolled for the duration of a pending appeal, rather than a complete waiver of financial penalty, is more appropriate to balance all the interests. "The law is clear, any sanction imposed on a civil contemnor should be calculated to advance the goal[] of coercing future compliance with the Court's order." *Waterkeeper All. Inc. v. Spirit of Utah Wilderness, Inc.*, No. 10 Civ. 1136 (NSR), 2020 WL 377951, at *3 (S.D.N.Y. Jan. 22, 2020), *aff'd sub nom. Waterkeeper All., Inc. v. Salt*, No. 20-3007, 2022 WL 3581303 (2d Cir. Aug. 22, 2022), *and aff'd sub nom. Waterkeeper All., Inc. v. Salt*, No. 20-3007, 2022 WL 3581303 (2d Cir. Aug. 22, 2022). Accordingly, the Government respectfully requests the Court impose a penalty of $1,000 per day, to be imposed immediately upon issuance of a contempt order but tolled while an appeal is pending. This penalty will provide an incentive for Kalder to promptly file a notice of appeal, if that is indeed the strategy it chooses to pursue, rather than waiting an additional 14 days after this Court issues a contempt order and causing unnecessary additional delay in a final adjudication. Similarly, if the Second Circuit were to uphold this Court's ruling, then the financial penalty would restart, giving Kalder an incentive to promptly comply and produce the documents.

Furthermore, both the contempt order and the financial penalty should be imposed jointly and severally on Kalder and Kalder's corporate officers. Particularly as Kalder has repeatedly stated that it has no available funds, and thus may be functionally immune from economic coercion, this sanction would be in keeping with the Court's "broad discretion to design a remedy that will bring about compliance." *Perfect Fit Indus., Inc. v. Acme Quilting Co.*, 673 F.2d 53, 57 (2d Cir. 1982). *See generally Waterkeeper All. Inc.*, 2020 WL 377951, at *3 (imposing contempt order and financial penalty on corporation and its officers); *see also Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522 (2d. Cir. 1990) (affirming the imposition of a sanction of attorneys' fees and costs on a law firm or individual lawyer that served as counsel to a party jointly and severally with the party under Fed. R. Civ. P. 37).

**Conclusion**

Accordingly, the Court should require Kalder to make a record, either at a conference or through an affidavit by Kalder's officer or officers, that Kalder's officers have reviewed the Court's Compulsion Order with counsel, that they will not comply with the Order to produce the

materials called for by Subpoena II, and that they understand the consequences of being held in civil contempt for refusing to comply with a Court order. Once this record is perfected, the Court should hold Kalder and its officers in contempt and impose a penalty of $1,000 per day, jointly and severally between Kalder and Kalder's officers, to be tolled while any appeal is pending, but only while the appeal is pending.

        Respectfully submitted,

        JAY CLAYTON
        United States Attorney

By: _____
        Allison C. Nichols
        Alexandra N. Rothman
        Assistant United States Attorneys
        (212) 637-2366/-2580

cc: Counsel for Kalder (by email)