**TABLE OF CONTENTS**

PRELIMINARY STATEMENT .......... 1

STATEMENT OF FACTS .......... 2

ARGUMENT .......... 4

I. THE STANDARD: THE PETITION'S ALLEGATIONS ARE TAKEN AS TRUE, CONSTRUED LIBERALLY, AND MEASURED FOR PLAUSIBILITY .......... 5

II. PETITIONER HAS ARTICLE III STANDING .......... 6

III. PETITIONER HAS STATUTORY STANDING UNDER § 853(n)(6)(A) AS THE BENEFICIARY OF A CONSTRUCTIVE TRUST .......... 7

IV. IN THE ALTERNATIVE, PETITIONER SHOULD BE GRANTED LEAVE TO AMEND .......... 13

V. THE COURT SHOULD PERMIT LIMITED DISCOVERY UNDER RULE 32.2(c)(1)(B) .......... 13

CONCLUSION .......... 14

## TABLE OF AUTHORITIES

**Cases**

*In re 650 Fifth Ave. & Related Props.*, 581 F. App'x 61 (2d Cir. 2014) .......... 7

*United States v. Benitez*, 779 F.2d 135 (2d Cir. 1985) .......... 10

*United States v. Cambio Exacto*, S.A., 166 F.3d 522 (2d Cir. 1999) .......... 6

*Counihan v. Allstate Ins. Co.*, 194 F.3d 357 (2d Cir. 1999) .......... 8

*Cuoco v. Moritsugu*, 222 F.3d 99 (2d Cir. 2000) .......... 13

*United States v. Daugerdas*, 892 F.3d 545 (2d Cir. 2018) .......... 5, 13

*United States v. Egan*, No. 10 Cr. 191 (JFK), 2011 WL 798852 (S.D.N.Y. Mar. 7, 2011); 811 F. Supp. 2d 829 (S.D.N.Y. 2011) .......... 5

*Erickson v. Pardus*, 551 U.S. 89 (2007) .......... 5

*Evans v. Winston & Strawn*, 303 A.D.2d 331 (1st Dep't 2003) .......... 12

*Federal Ins. Co. v. United States*, 882 F.3d 348 (2d Cir. 2018) .......... 1, 5, 7, 10

*In re First Cent. Fin. Corp.*, 377 F.3d 209 (2d Cir. 2004) .......... 8, 11, 12

*Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794 (2d Cir. 1999) .......... 13

*In re Koreag*, Controle et Revision S.A., 961 F.2d 341 (2d Cir. 1992) .......... 6, 8

*Makarova v. United States*, 201 F.3d 110 (2d Cir. 2000) .......... 2, 9

*Pacheco v. Serendensky*, 393 F.3d 348 (2d Cir. 2004) .......... 5, 10, 11, 14

*United States v. Rahmankulov*, No. 20 Cr. 653 (RA), 2024 WL 68419 (S.D.N.Y. Jan. 5, 2024) .......... 6

*United States v. Ribadeneira*, 105 F.3d 833 (2d Cir. 1997) .......... 7

*Rogers v. Rogers*, 63 N.Y.2d 582 (1984) .......... 10

*United States v. Salti*, 579 F.3d 656 (6th Cir. 2009) .......... 5

*United States v. Schwimmer*, 968 F.2d 1570 (2d Cir. 1992) .......... 7, 10, 14

*United States v. Semones*, No. 1:20-cr-00043-DCN, 2021 WL 2695357 (D. Idaho June 30, 2021) .......... 10

*United States v. Sharma*, No. 18 Cr. 340 (LGS), Dkt. 481 (S.D.N.Y. Mar. 29, 2021) .......... 13

*Sharp v. Kosmalski*, 40 N.Y.2d 119 (1976) .......... 7, 8

*United States v. Shefton*, 548 F.3d 1360 (11th Cir. 2008) .......... 12

*Simonds v. Simonds*, 45 N.Y.2d 233 (1978) .......... 7, 12

*Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471 (2d Cir. 2006) .......... 5

*United States v. Vilar*, No. 05 Cr. 621 (RJS), 2021 WL 4504699 (S.D.N.Y. Sept. 30, 2021) .......... 10, 11, 12

*United States v. Watts*, 786 F.3d 152 (2d Cir. 2015) .......... 6, 7, 8, 13

*Willis Mgmt. (Vt.)*, Ltd. v. United States, 652 F.3d 236 (2d Cir. 2011) .......... 5, 7, 10, 11, 12

**Statutes and Rules**

21 U.S.C. § 853(n) .......... 7, 13

Fed. R. Crim. P. 32.2(c) .......... 2, 5, 10, 11, 13, 14

Fed. R. Civ. P. 12(b) .......... 2, 5, 9

**UNITED STATES DISTRICT COURT — SOUTHERN DISTRICT OF NEW YORK**

**UNITED STATES OF AMERICA v. GÖKÇE GÜVEN, Defendant; CEM YILDIRIM and TUNC YILDIRIM, Petitioners. S3 25 Cr. 592 (LAK) (GS)**

**MEMORANDUM OF LAW OF PETITIONER TUNC YILDIRIM IN OPPOSITION TO THE GOVERNMENT'S MOTION TO DISMISS HIS PETITION (DKT. 73)**

Petitioner Tunc Yildirim, pro se, respectfully submits this memorandum in opposition to the Government's motion to dismiss (Dkt. 84, the "Motion" or "Mem."), together with the accompanying Declaration of Tunc Yildirim ("Decl."), which authenticates Exhibits 11 through 16, and a Proposed Amended Petition. This memorandum addresses only Petitioner's own petition (Dkt. 73, the "Petition"); Petitioner does not speak for Cem Yildirim, whose petition rests on different facts.

**PRELIMINARY STATEMENT**

The Government asks the Court to hold, on the pleadings, that a person who built and handed over a company's production platform on its chief executive's promise of payment — and whose platform the company kept, and kept running, for months after refusing to pay — stands in law exactly where a lender stands: as a "general unsecured creditor" with no interest in anything. New York equity does not treat him that way, and neither does the Second Circuit. When property is transferred in reliance on a promise within a relationship of trust and is retained without payment, the law imposes a constructive trust, and "if applicable state law imposes a constructive trust in property in favor of a third party, the third party's interest is superior to the government's." *Federal Ins. Co. v. United States*, 882 F.3d 348, 371 (2d Cir. 2018). The Government's own memorandum concedes the rule. (Mem. 8.)

The Motion therefore does not, and cannot, rest on the law of general creditors. It rests on three assertions of fact that appear nowhere in the Petition: that Petitioner "w[as] not defrauded," that he was not a "crime victim[]," and that his services "were unrelated to the

fraud scheme." (Mem. 10–11 & n.2.) Those assertions are contradicted by the Government's own charging instrument, which alleges a scheme running "up to and including at least in or about November 2025" — the entire period of Petitioner's engagement — carried out through "lies about Kalder's financials, brand partners, and paying customers," made "to potential investors and brand partners." (S2 Indictment, Dkt. 47, ¶¶ 1, 4.) The same brand-partner representations induced Petitioner's work. On a motion under Rule 32.2(c)(1)(A), the Petition's allegations are taken as true, a pro se petition is construed liberally, and disputed facts are not resolved against the petitioner. The Motion should be denied. In the alternative, Petitioner requests leave to file the accompanying Proposed Amended Petition, which he requested in advance (Pet. ¶ 37), and in either event the limited discovery that Rule 32.2(c)(1)(B) contemplates and that the Petition itself requests (Pet. ¶ 23).

## STATEMENT OF FACTS

The following facts are drawn from the Petition, its exhibits, and the Declaration, which the Court may consider because the Government has framed its Motion under Rule 12(b)(1). *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

**The relationship.** In mid-2025, Kalder Inc. ("Kalder") had lost access to and control of substantial portions of its own technical infrastructure. (Pet. ¶ 7.) Its chief executive, majority shareholder, and — as this Court later found — sole director, Gökçe Güven, recruited Petitioner as an engineering advisor to recover and rebuild it. (Pet. ¶¶ 7–9; Dkt. 50.) Kalder and Petitioner executed a Mutual Nondisclosure Agreement effective June 10, 2025. (Pet. Ex. 8.) Kalder then entrusted Petitioner with control of its entire technical estate: an administrator identity in its Okta workspace, Owner-level access to its GitHub organization, domain-management authority over its internet domains, and access to its AWS, Slack, Notion, and Linear systems. (Pet. ¶ 9 & Ex. 9.) Ms. Güven directed and accepted Petitioner's work on a near-daily basis. (Pet. ¶¶ 9, 12.)

**The promise.** Kalder's written proposal of July 14, 2025 ($140 per hour) was not accepted; the parties agreed orally on $200 per hour with updated written terms to follow. (Pet. ¶¶ 8–9.) On August 22, 2025, Ms. Güven met Petitioner in person in Istanbul and discussed his accumulated hours and the formalization of his terms; on August 23 she wrote that she wished to discuss "offer details" and wanted him on the team "long-term"; on August 28 she wrote that she had drafted an updated offer with the "offer part . . . backdated." (Pet. ¶ 10 & Ex. 3.) On August 30, 2025, she wrote that "our contract was signed the week of July 23rd" and that "Tunc and Pavan [were] now being more hands-on and needing the right comp structure too." (Ex. 11.) On September 9, 2025 — the day payment was demanded — she wrote that she would "add you to Gusto so this can be processed" and, as to Petitioner, "[t]o compensate for his previous work, I'll discuss it with Tunc, assess the work, and propose a plan." (Ex. 12.)

**The transfer.** Between July 7 and September 1, 2025, Petitioner designed and built, and transferred into Kalder's own systems, identified work product: infrastructure-as-code (Terraform) defining a deployable AWS environment; restructured repositories; a continuous-integration and deployment pipeline building container images deployed to a Kubernetes (EKS) cluster via ArgoCD; logging and observability; local development infrastructure; a baseline Go services framework including an identity service; and a written engineering assessment. (Pet. ¶ 11 & Exs. 2, 7.) He was the leading contributor to Kalder's principal repository — 81 commits and more than 12,000 lines changed on its default branch alone — and Kalder's own project plan adopted his architecture. (Pet. ¶ 12 & Ex. 2.)

**The retention.** Kalder kept the work. Its AWS environment, built by Petitioner, remained in operation through at least December 16, 2025 — more than three months after Kalder refused payment — and Kalder pursued an AWS migration program and credits with Amazon on the strength of it. (Pet. ¶ 13 & Ex. 10.) At no point did Kalder contend the work lacked value or return it. (Pet. ¶ 16.) Kalder paid nothing. (Pet. ¶¶ 14–15.)

**The inducement and the charged scheme.** The Government's Superseding Indictment alleges that "[f]rom at least in or about 2024 up to and including at least in or about November 2025," Ms. Güven "falsely represented Kalder's business success and prospects through lies about Kalder's financials, brand partners, and paying customers," boasting "to potential investors and brand partners" of "rapidly growing brand partners" when in truth "[o]ther brands had no agreement with Kalder whatsoever," and transmitting "a forged contract" with a purported brand partner "as an example of Kalder's existing brand partnerships." (Dkt. 47 ¶¶ 1, 4, 6–7, 10.) During Petitioner's engagement, Ms. Güven made the same category of representation to him. On July 24, 2025, in response to his question whether Kalder had contracts with the enterprise brands she described as awaiting delivery, she sent him documents titled "Kalder&Pegasus Contract 2025.pdf" and "Kalder SAAS Order Form_Albertsons," describing them as examples. (Ex. 13.) On July 31, 2025, she brought him to a dinner with a representative of Turkish Airlines and wrote to him that she had told them "our head of eng is coming" — a title he did not hold and had not authorized. (Ex. 14.) On August 23, 2025, she urged him to stay because "we need you . . . to accelerate our customer onboarding," adding, "we are in a world where even a few enterprises will change the volume a lot." (Ex. 15.) Those enterprise relationships were, in fact, early-stage discussions; none was executed or committed. (Decl. ¶¶ 9–11.)

**Kalder today.** Ms. Güven was "the chief executive officer, the majority shareholder, and the sole director" of Kalder. (Dkt. 50.) Its only other director resigned in 2025, "leaving defendant as Kalder's only board member." (Dkt. 44 at 6–7.) Kalder "refused to comply with this Court's March 2 order compelling the company to comply with a government subpoena," prompting a contempt motion. (Dkt. 48, 50.) Kalder's known funds are the two Mercury accounts "held in the name of Kalder" that the Government has forfeited as the Specific Property. (Dkt. 65 ¶ 1.)

## ARGUMENT

## I. THE STANDARD: THE PETITION'S ALLEGATIONS ARE TAKEN AS TRUE, CONSTRUED LIBERALLY, AND MEASURED FOR PLAUSIBILITY

A motion under Rule 32.2(c)(1)(A) "should be treated like a motion to dismiss a civil complaint under Federal Rule of Civil Procedure 12(b)." *Pacheco v. Serendensky*, 393 F.3d 348, 352 (2d Cir. 2004); *United States v. Daugerdas*, 892 F.3d 545, 552 (2d Cir. 2018). The petition's facts "are assumed to be true," Fed. R. Crim. P. 32.2(c)(1)(A), and it survives if it states "enough facts to state a claim to relief that is plausible on its face." *Willis Mgmt. (Vt.), Ltd. v. United States*, 652 F.3d 236, 241–42 (2d Cir. 2011). Dismissal is appropriate "only where the plaintiff fails to plead any factual content that allows the court to draw the reasonable inference that he is entitled to relief." *Federal Ins.*, 882 F.3d at 370–71. And "[o]nly after some discovery has taken place may a party move for summary judgment; at that point the petitioner would be required to produce evidence supporting a prima facie case of entitlement, but not before." *Pacheco*, 393 F.3d at 352.

Because Petitioner proceeds pro se, his submissions are construed "liberally" and "interpret[ed] [so as] to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (reversing a Rule 12(b)(1) dismissal); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The Government's memorandum does not mention this rule.

The Government's cases on the absence of discovery do not change the standard. *Salti* held that a hearing is not required before ruling on a motion to dismiss — and then reversed the dismissal, because the constructive-trust claimant had "presented a facially colorable claim." *United States v. Salti*, 579 F.3d 656, 667, 670–72 (6th Cir. 2009). *Egan* held that discovery follows the ruling on the motion, and the same court thereafter denied the Government's motion to dismiss and, after discovery, awarded the petitioners their funds. *United States v. Egan*, No. 10 Cr. 191 (JFK), 2011 WL 798852 (S.D.N.Y. Mar. 7, 2011); *United States v. Egan*, 811 F. Supp. 2d 829, 832, 841 (S.D.N.Y. 2011). That is the sequence Rule 32.2(c)(1)(B)

prescribes.

## II. PETITIONER HAS ARTICLE III STANDING

The Government's Article III argument rests on the premise that Petitioner "simply state[s] in conclusory fashion that a debt is owed." (Mem. 10.) That is not what the Petition alleges, and the premise assumes the conclusion.

"[I]t is injury that is at the heart of the standing question." *United States v. Cambio Exacto, S.A.*, 166 F.3d 522, 527 (2d Cir. 1999). In *Cambio Exacto* — the Government's own authority — the Second Circuit *reversed* the dismissal of two claimants who did not own the seized funds, because they "had a financial stake in the funds" and "[s]ubstantial economic harm is plainly the type of injury for which parties may seek redress in federal court." *Id.* at 527–28. Ownership "is only evidence of direct injury," and the court "need not decide the extent to which [claimants] 'own' the money." *Id.* at 528.

Petitioner's injury is concrete, particularized, and redressable. He alleges an equitable interest — a constructive trust — in the value he transferred to Kalder and Kalder retained. (Pet. ¶¶ 19, 21–22, 36.) A constructive trust "confers on the true owner of the property an equitable interest in the property superior to" later claimants; it is not "a claim against the owner," it is a claim *to be* the equitable owner. *United States v. Watts*, 786 F.3d 152, 168 (2d Cir. 2015) (quoting *In re Koreag, Controle et Revision S.A.*, 961 F.2d 341, 352 (2d Cir. 1992)). Forfeiture of every dollar in Kalder's accounts extinguishes the only res to which that interest can attach. That is the injury; denial of the Motion redresses it.

*United States v. Rahmankulov*, No. 20 Cr. 653 (RA), 2024 WL 68419 (S.D.N.Y. Jan. 5, 2024), is not to the contrary. The pro se petitioner there asserted, in a sentence, that he was "the lawful owner" of funds in a corporation's bank account, while alleging "neither that he is a shareholder of [the corporation] nor any facts indicating that he is" — no relationship, no transfer, no theory. *Id.*, Dkt. 303 at 5. The court dismissed without prejudice. *Id.* at 6. Petitioner here pleads what that petitioner omitted: a relationship of trust (Pet. ¶¶ 7, 9; Exs. 8–9), an

identified transfer (¶ 11), retention and use (¶¶ 13, 16), and the equitable doctrine that converts those facts into an interest in the property (¶¶ 21–22). *In re 650 Fifth Ave. & Related Props.*, 581 F. App'x 61 (2d Cir. 2014), a non-precedential summary order, rejected a constructive trust because the claimants there alleged that their property had been *seized* by a foreign government — not transferred in reliance on any promise — and alleged no confidential relationship at all. *Id.* at 62. Every one of those missing elements is pleaded here.

## III. PETITIONER HAS STATUTORY STANDING UNDER § 853(n)(6)(A) AS THE BENEFICIARY OF A CONSTRUCTIVE TRUST

**A. The governing rule is conceded.** "[I]t is the law of this Circuit that a constructive trust qualifies as a 'legal . . . interest' for the purposes of § 853(n)(6)(A)." *Willis*, 652 F.3d at 245; *United States v. Schwimmer*, 968 F.2d 1570, 1582 (2d Cir. 1992); *Watts*, 786 F.3d at 167–68 (describing *Willis* as "the exception to the relation-back doctrine"). The Government agrees. (Mem. 8, quoting *Federal Ins.*, 882 F.3d at 371.) The general-creditor cases on which the Motion otherwise relies — *Ribadeneira*, *Madoff*, and their out-of-circuit companions (Mem. 7–8) — concern petitioners who pleaded only a debt. *Willis* expressly confined *Ribadeneira*'s constructive-trust footnote to "general creditors" and held it "not persuasive" as to petitioners who "allege a traceable interest in the specific properties." 652 F.3d at 243. Whether Petitioner is a general creditor is therefore not the premise of the analysis; it is the question the constructive-trust doctrine answers.

**B. The Petition pleads each element of a constructive trust under New York law.** New York identifies four factors: "(1) a confidential or fiduciary relation, (2) a promise, (3) a transfer in reliance thereon and (4) unjust enrichment." *Sharp v. Kosmalski*, 40 N.Y.2d 119, 121 (1976). They are "useful in many cases," but "constructive trust doctrine is not rigidly limited"; a trust "will be erected whenever necessary to satisfy the demands of justice." *Simonds v. Simonds*, 45 N.Y.2d 233, 241 (1978). "[T]he New York Courts do not insist that a constructive trust must fit within the framework of these elements"; what is required is "a

showing that property is held under circumstances that render unconscionable and inequitable the continued holding of the property and that the remedy is essential to prevent unjust enrichment." *Counihan v. Allstate Ins. Co.*, 194 F.3d 357, 362 (2d Cir. 1999); *Koreag*, 961 F.2d at 353 ("the absence of any one factor will not itself defeat the imposition of a constructive trust when otherwise required by equity"); *Watts*, 786 F.3d at 168 (same). Unjust enrichment is "the most important" element. *In re First Cent. Fin. Corp.*, 377 F.3d 209, 212 (2d Cir. 2004).

*Confidential relationship.* Kalder made Petitioner an administrator of its identity system, an Owner of its source-code organization, the manager of its internet domains, and the holder of its cloud credentials, under an executed nondisclosure agreement, and its chief executive directed his work daily. (Pet. ¶¶ 7, 9; Exs. 8–9.) A company that hands a person the keys to everything it owns has reposed trust in him. The Government does not contest this element.

*Promise.* An express oral promise of $200 per hour; a written proposal evidencing the engagement; the chief executive's written statements that updated, backdated terms were being prepared; and her subsequent written acknowledgments that a contract had been "signed," that payment would be "processed," and that Petitioner's "previous work" would be compensated. (Pet. ¶¶ 8–10; Exs. 11–12.) New York does not even require an express promise: "courts of equity have imposed a constructive trust upon property transferred in reliance upon a confidential relationship." *Sharp*, 40 N.Y.2d at 122.

*Transfer in reliance.* Petitioner did not lend money. He created identified property — infrastructure, code, pipelines, a services framework, an engineering assessment — and transferred it into Kalder's own repositories and cloud accounts, in reliance on the promise of payment, working 400 hours over eight weeks at escalating intensity as the promised terms remained "coming." (Pet. ¶¶ 10–12, 14; Exs. 2–4, 7.) *Sharp* itself involved the transfer of a farm, not cash. 40 N.Y.2d at 120–21.

*Unjust enrichment.* Kalder retained the work, adopted it as its roadmap, kept it running through at least December 16, 2025, told Petitioner in September 2025 that the plan was to transition to it in about six months, that Kalder would "reuse" the work then, and that she did not want any of it "to go to waste" (Decl. ¶ 11), sought AWS migration credits on the strength of it, and paid nothing. (Pet. ¶¶ 13, 16; Exs. 2, 10.) That is enrichment; refusing payment while proposing "a plan" to "compensate for his previous work" is what makes it unjust.

**C. The Government's contrary "facts" are outside the Petition and contradicted by its own indictment.** The Motion asserts that "the Petitioners were not defrauded, nor were they crime victims," and, in a footnote, that their services "were unrelated to the fraud scheme." (Mem. 10–11 & n.2.) No allegation in the Petition says so; the Petition simply, and deliberately, did not put the defendant's criminal conduct at issue. (Pet. ¶ 2.) A movant under Rule 12(b) may not supply facts of its own and then dismiss the pleading for failing to rebut them.

The Government's assertions are, in any event, contradicted by its own charging instrument. The Superseding Indictment alleges a scheme continuing "up to and including at least in or about November 2025" (Dkt. 47 ¶ 1) — encompassing every day of Petitioner's engagement — carried out through misrepresentations about "brand partners, and paying customers" made "to potential investors and brand partners" (¶¶ 1, 4), including brands that "had no agreement with Kalder whatsoever" (¶ 6) and a "forged contract" presented "as an example of Kalder's existing brand partnerships" (¶ 10). Petitioner's declaration establishes that the same kind of representation — enterprise brand relationships presented as committed demand, supported by documents titled as contracts and order forms — was made to him to induce and sustain the work. (Exs. 13–15.) Whether the Court treats that as pleaded (through the Proposed Amended Petition) or as evidence on a Rule 12(b)(1) motion under *Makarova*, the result is the same: the Government's premise is a disputed fact that cannot be resolved against Petitioner now.

The footnote's authority does not help it. *United States v. Semones*, 2021 WL 2695357 (D. Idaho June 30, 2021), concerned a construction lender that had secured its loan with a deed of trust and then voluntarily released it; the court treated it as an unperfected creditor. The words "services" and "unrelated" do not appear in the opinion. It says nothing about a transferor of identified property within a confidential relationship.

**D. Tracing is a burden of proof, not a pleading bar — and the Petition alleges an identifiable res.** The Government's principal point is that Petitioner "ha[s] failed" to trace his property into the Mercury accounts. (Mem. 11.) Three answers.

*First*, the Second Circuit has already held that the remedy for an undeveloped tracing record is a tracing inquiry, not dismissal. In *Schwimmer*, the court remanded for "a tracing inquiry" guided by "applicable rules concerning commingled funds." 968 F.2d at 1584. In *Willis*, it vacated a Rule 32.2(c)(1)(A) dismissal, holding that "based on the record heretofore developed, we see no reason why a constructive trust should not be recognized." 652 F.3d at 246. In *Federal Insurance*, it vacated a summary dismissal and remanded for findings on tracing. 882 F.3d at 372–73. *Pacheco* forbids requiring evidentiary proof before discovery. 393 F.3d at 352. And in *Vilar* — the case the Government cites for its "six elements" — the court *denied* the Government's motion to dismiss as to the constructive-trust petitioners, holding that "the law does not require such rigorous tracing," that claimants to a commingled fund "have an interest in the mingled fund in proportion to their contributions," and that the petitioners "satisfied their burden at the pleading stage." *United States v. Vilar*, No. 05 Cr. 621 (RJS), 2021 WL 4504699 (S.D.N.Y. Sept. 30, 2021), Dkt. 972 at 8–11. The Government's quotation from *Benitez* omits the sentence that follows it: "*But see Rogers v. Rogers*, 63 N.Y.2d 582, 587 (1984) (acknowledging need to relax strict tracing requirements in some circumstances)" — after which the court *upheld* the constructive trust. *United States v. Benitez*, 779 F.2d 135, 140 (2d Cir. 1985); *see Schwimmer*, 968 F.2d at 1584 (describing *Benitez* as applying "a very relaxed tracing standard").

*Second*, the res is identifiable. The property Petitioner transferred was the production-grade platform Kalder retained and kept running from August through at least December 2025; the Specific Property is Kalder's operating accounts for the same period. (Pet. ¶¶ 13, 17.) And Kalder has since assigned a price to its platform: in July 2026 it announced an agreement to sell its operating assets, including that platform, to a third party. (Decl. ¶ 12A.) Value that can be sold can be traced. On information and belief, those accounts hold value preserved and generated by that platform — the continued operation of the business, the investor confidence it sustained, and the AWS credits and migration program pursued on its foundation. (Pet. ¶ 23.) That is a plausible allegation of traceable value, which is all *Vilar* and *Willis* require at this stage.

*Third*, the Petition already pleads exactly this. Paragraph 23 alleges, on information and belief, that the Mercury accounts "include or are attributable to value preserved, generated, or made available to Kalder through the retained work product," that "[t]he records required to trace Kalder's receipts, capitalization, and internal use of the transferred work . . . are exclusively in the possession of Kalder, Defendant, or the Government," and "requests leave to take the discovery contemplated by Federal Rule of Criminal Procedure 32.2(c)(1)(B)." (Pet. ¶ 23.) The Government's memorandum does not mention paragraph 23. Rule 32.2(c)(1)(B) authorizes discovery "if the court determines that discovery is necessary or desirable to resolve factual issues"; a petitioner who identifies the res, pleads the nexus, and identifies the records that would prove it has done all that can be asked before discovery. *Pacheco*, 393 F.3d at 352.

**E. The Government's proposed "adequate legal remedy" — a lawsuit against Kalder — is illusory, and the Government is the reason.** A constructive trust requires that a legal remedy be inadequate. *First Cent.*, 377 F.3d at 215. The Motion says Petitioner "can initiate a civil lawsuit against Kalder." (Mem. 11.) Consider what that lawsuit would be. Kalder's chief executive, majority shareholder, and sole director is the convicted defendant. (Dkt. 50.) Its only other director resigned. (Dkt. 44 at 6–7.) It defied this Court's order

compelling compliance with a grand-jury subpoena and faced a contempt motion. (Dkt. 48, 50.) And its known funds — the two accounts "held in the name of Kalder" — are the Specific Property, which the Government is confiscating in this very proceeding. (Dkt. 65.) A judgment against such an entity would be a piece of paper. New York recognizes exactly this: *First Central* explains that a damages remedy is adequate only where it does not "appear that the legal remedy of damages will be inadequate," quoting with approval a decision in which the claim failed because the plaintiffs "d[id] not claim that [the defendant] is unable to repay" them. 377 F.3d at 215 (quoting *Evans v. Winston & Strawn*, 303 A.D.2d 331, 757 N.Y.S.2d 532, 534 (1st Dep't 2003)). And *Simonds* imposed a constructive trust on assets in third parties' hands precisely because the estate against which the plaintiff held her legal claim was insolvent. 45 N.Y.2d at 238, 240. *Vilar* held allegations of inadequate recovery "plausible" at the pleading stage. *Vilar*, Dkt. 972 at 9–10. *Willis* adds that the Government's own remission process "is not an adequate legal remedy that would deprive a district court of its equitable powers." 652 F.3d at 243–44.

The Government's remaining point on this element concerns Cem Yildirim's Florida action. (Mem. 11.) Petitioner is not a party to it (Pet. ¶ 28), and it proves his point: Kalder did not appear, and the clerk entered a default against it on June 24, 2026. (Ex. 16.) A remedy that yields a default against an absent shell is the definition of inadequate.

**F. Relation-back does not defeat a constructive trust.** The Government argues that because the scheme began in 2024, its interest "had already vested" before Petitioner's 2025 agreement. (Mem. 10.) But a constructive trust "arises when the underlying equities exist, not when it is announced," and "if a constructive trust properly should be imposed . . . it was never truly the defendant's property and is not subject to forfeiture . . . in the first instance." *Willis*, 652 F.3d at 244–45; *accord United States v. Shefton*, 548 F.3d 1360, 1364–66 (11th Cir. 2008). The Government itself describes the constructive trust as "[t]he exception" to its relation-back argument. (Mem. 8.) Moreover, the relation-back cases the Government cites concern

petitioners who acquired an interest in *proceeds* from the defendant. (Mem. 6–7.) Petitioner did not acquire anything from Ms. Güven; he transferred his own property *to* Kalder. *Watts* itself notes that § 853(n)(6)(A) is "better suited" to claims of this kind than to claims of purchasers of proceeds. 786 F.3d at 166–67.

## IV. IN THE ALTERNATIVE, PETITIONER SHOULD BE GRANTED LEAVE TO AMEND

The Petition anticipated this Motion and requested leave to amend rather than dismissal with prejudice should the Court require additional specificity. (Pet. ¶ 37.) The Second Circuit has directed that a pro se litigant be granted leave to amend "at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated," *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)), and applied that rule to a § 853(n) petition "because of the significant constitutional rights potentially at stake," *Daugerdas*, 892 F.3d at 553; *see also United States v. Sharma*, No. 18 Cr. 340 (LGS), Dkt. 481 (S.D.N.Y. Mar. 29, 2021) (granting leave to file amended § 853(n) petition with tracing allegations). The Proposed Amended Petition, submitted herewith, adds three paragraphs and one alternative claim: (i) Ms. Güven's written acknowledgments of August 30 and September 9, 2025 (¶ 10A); (ii) the inducement representations and their overlap with the charged scheme (¶¶ 10B–10C); and (iii) an equitable lien in the alternative, together with the facts establishing that no adequate remedy at law exists (¶ 36A). It otherwise leaves the Petition — including paragraph 23's tracing allegations and discovery request — as filed. None of the additions is futile; each responds directly to an assertion in the Motion.

## V. THE COURT SHOULD PERMIT LIMITED DISCOVERY UNDER RULE 32.2(c)(1)(B)

Upon denial of the Motion, Petitioner respectfully requests leave to take the limited discovery Rule 32.2(c)(1)(B) contemplates, confined to: (a) the transaction histories of the two

Mercury accounts from July 1, 2025 to the present; (b) Kalder's AWS and related cloud-vendor invoices and credits from July 2025 through December 2025; (c) Kalder's communications with investors and prospective acquirers referencing its engineering platform; and (d) records of any sale or transfer of Kalder's assets after May 1, 2026 — including the agreement, the consideration paid, and the disposition of the proceeds. The last category has become concrete: Kalder publicly announced on July 27, 2026, two days before the petition deadline, an agreement to sell "certain operating assets," including its platform, to a third party. (Decl. ¶ 12A.) On information and belief, the platform sold comprises or incorporates the infrastructure Petitioner built and Kalder retained without paying for it (Proposed Am. Pet. ¶ 23; Decl. ¶ 12A); the price paid for it is Kalder's money; and whether that money is in the Specific Property, or was routed around it, is a question only those records can answer. They are not in Petitioner's possession and are the means by which tracing is established. *Schwimmer*, 968 F.2d at 1584; *Pacheco*, 393 F.3d at 352.

## CONCLUSION

The Motion should be denied. In the alternative, Petitioner requests leave to file the Proposed Amended Petition, and in either event requests limited discovery under Rule 32.2(c)(1)(B) and such further relief as is just.

Dated: October 16, 2026
Istanbul, Türkiye
Respectfully submitted,
/s/ Tunc Yildirim T. Yildirim

Tunc Yildirim, Petitioner, Pro Se
9762 Magnolia Blossom Dr., Tampa, FL 33626
(760) 440-8945 · tunc.y.contact@gmail.com

cc: Allison C. Nichols and Alexandra N. Rothman, Assistant United States Attorneys (by electronic mail)